## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SECURITY NATIONAL INSURANCE
COMPANY,

      Plaintiff,

v.                              Case No: 8:22-cv-106-CEH-CPT

HENDRIK UITERWYK, P.A., VICKI
S. UITERWYK and A ADVOCATES
& ATTORNEYS OF KENNEDY
LAW GROUP, P.A.,

      Defendants.

_____

## <u>ORDER</u>

In this declaratory judgment action, Plaintiff Security National Insurance
Company sues Hendrik Uiterwyk, P.A., Vicki S. Uiterwyk, and A Advocates &
Attorneys of Kennedy Law Group, P.A., seeking a declaration that it had no duty to
defend or indemnify several defendants to an underlying lawsuit and probate claim
pursuant to a professional liability insurance policy.

Now before the Court are Plaintiff's Motion for Summary Judgment (Doc. 86),
Defendants' Response in Opposition (Doc. 92), Plaintiff's Reply (Doc. 95) and the
Parties' Stipulation of Agreed Material Facts (Doc. 91).[1] Separately, Defendants move
for partial summary judgment on a single count in the Amended Complaint. *See* Docs.
44, 87.

---

[1] The Court has also considered Plaintiff's supplemental authority. *See* Doc. 98.

Having considered the submissions and being fully advised in the premises, the Court will grant Plaintiff's Motion for Summary Judgment as to Count Five and enter declaratory judgment in favor of Plaintiff, Security National Insurance Company. Plaintiff's other Counts will be dismissed as redundant, and Defendants' Motion for Partial Summary Judgment (Doc. 87) will consequently be denied as moot.

## I.      FACTS AND BACKGROUND[2]

The Amended Complaint consists of five Counts, each of which seeks a declaration that Security National had no duty to defend or indemnify the defendants in the Underlying Actions. *See* Doc. 44; Doc. 86 at 5. Specifically, Plaintiff argues that: the Insuring Agreement of the Policy is not triggered by the underlying claims (Counts One to Three); the Insureds failed to make necessary disclosures in their Policy Application and Loss Warranty (Count Four); and coverage would in any case be barred by a policy exclusion (Count Five). Doc. 44 at 14–25.[3]

*The Parties*

Plaintiff Security National Insurance Company ("Security National") issues insurance policies, including for lawyers' professional liability insurance. Doc. 44 ¶¶ 4, 9. Defendant Hendrik Uiterwyk, P.A. ("HUPA") is a Florida for Profit

---

[2] The Court has determined the facts, which are undisputed unless otherwise noted, based on the Parties' submissions and exhibits, including the Stipulation of Agreed Material Facts (Doc. 91). For purposes of summary judgment, the Court considers the facts in the light most favorable to the non-moving party as required by Fed. R. Civ. P. 56.

[3] Plaintiff moves for summary judgment on all counts except for Count Four, indicating that it would seek relief on this count at trial in the event its summary judgment motion is not granted. Doc. 86 at 5 n.4.

Corporation. *Id.* ¶ 10. Hendrik Uiterwyk (individually) was managing partner and sole owner of HUPA from at least January 1, 2016, through December 10, 2020, when he died. Doc. 91 ¶¶ 5, 7.  Defendant Vicki S. Uiterwyk is sued as personal representative of the duly formed estate of Mr. Uiterwyk. Doc. 44 ¶ 11; Doc. 46 ¶ 11.

Defendants Erik G. Abrahamson, P.A. ("EAPA"), a Florida corporation, and its owner, Erik G. Abrahamson, Esq. settled both the Underlying Lawsuit and this action. *See* Doc. 86-2 at 2; Docs. 93, 94. As such, Plaintiff asserts (and Defendants do not dispute) that the issue of whether Plaintiff had a duty to defend or indemnify them is moot. Doc. 86 at 2 n.1. The Court agrees, and therefore will not discuss the claims against them unless necessary.  Therefore, only HUPA and the Uiterwyk Estate (the "Uiterwyk Defendants") remain as Defendants. *See* Doc. 92 at 1.

At some point in time, Mr. Uiterwyk and Mr. Abrahamson formed a partnership by which their respective entities, HUPA and EAPA, would do business as a single law firm known as Abrahamson and Uiterwyk ("A&U"). Doc. 86 ¶ 6. Accordingly, A&U was registered with the Florida Division of Corporations as a d/b/a owned by HUPA and EAPA. Doc. 86-1. A&U is also the Named Insured in the Security National Insurance Policy at the heart of this case. Doc. 44-4 at 10.

Lastly, Defendant Advocates & Attorneys of Kennedy Law Group, P.A. ("KLG"), plaintiff in the Underlying Actions, is a professional association that, as relevant to the Underlying Actions, entered into a 2002 joint venture agreement (the "JVA") with Uiterwyk & Barnes, P.A., (which would become HUPA). Doc. 44-1 ¶ 2, Doc. 86-5.

*The Policy*

Security National issued a Lawyers' Professional Liability Insurance Policy to A&U[4] bearing Policy No. SES1797032 00, for the period of December 25, 2020, to December 25, 2021 (the "Policy"). Doc. 44-4, Doc. 91 ¶ 1. The Parties do not dispute that both Uiterwyk Defendants are Insured under the Policy.[5] However, Plaintiff asserts that they are covered solely with respect to the performance of duties on behalf of A&U in rendering "Professional Services" pursuant to the Policy, and that Exclusion I(1) bars coverage regardless. *See* Docs. 44, 86.

The Policy limits coverage to Damages resulting from a Claim alleging a "Wrongful Act." Doc. 44-4 at 16. A Wrongful Act, in turn, is "any actual or alleged

---

[4] Again, A&U (Abrahamson & Uiterwyk) is registered with the Florida Division of Corporations as a d/b/a owned by HUPA and EAPA, two professional associations. Doc. 86-1.

[5] *See* Doc. 44 at 18 ("J. 'Insured' means:

1. the Named Insured and any Predecessor Firm designated in the Declarations;

2. any individual or professional corporation who is or becomes a partner, officer, director, stockholder, per diem attorney, independent contract attorney, or employee of the Named Insured, but solely while acting within the scope of their duties as such on behalf of the Named Insured in rendering Professional Services;

3. any individual or professional corporation who was a partner, officer, director, stockholder, per diem attorney, independent contract attorney, or employee of the Named Insured, but solely while acting within the scope of their duties as such on behalf of the Named Insured in rendering Professional Services; [. . .]

6. the estate, heirs, executors, administrators, assigns and legal representatives of any Insured in the event of death, incapacity, insolvency or bankruptcy, but any such coverage shall apply only with respect to a Wrongful Act of such Insured;)

negligent act, error, or omission committed or attempted in the rendering or failing to render Professional Services by any Insured on behalf of the Named Insured [A&U]," including but not limited to Personal Injury." *Id.* at 21. Professional Services are defined as services provided by an Insured "to others as a lawyer, mediator, arbitrator or notary public but solely for services on behalf of the Named Insured or Predecessor Firm designated in the Declarations; or . . . performed by any Insured as an administrator, conservator, receiver, executor, guardian, trustee, or in any other fiduciary capacity, but only if the act or omission in dispute is in the rendering of services ordinarily performed as a lawyer and then only to the extent that such services are on behalf of and inure to the benefit of the Named Insured or any Predecessor Firm designated in the Declarations." *Id.*

As relevant to Count Five, the Policy contains various exclusions, including Exclusion I(1). *Id.* at 23. Exclusion I(1) bars coverage for any Claim "based upon or arising out of any actual or alleged activities of an Insured as, or an Insured acting in, the capacity as an officer, director, partner, trustee or employee of a pension, welfare, profit sharing, mutual or investment trust or fund, charitable organization, corporation or business enterprise, other than [A&U]." *Id.*

*Underlying Actions*

Plaintiff seeks a declaratory judgment that it had no duty to defend or indemnify the Uiterwyk Defendants in an underlying state court lawsuit and a probate claim. Doc. 44 ¶¶ 1–3. In the Underlying Actions, the allegations of which are detailed below,

KLG claimed that the Uiterwyk Defendants violated the 2002 JVA through various acts and omissions. Doc. 44 ¶ 10; Doc. 44-1.[6]

On February 16, 2021, KLG filed an underlying lawsuit against HUPA, Vicki Uiterwyk as Personal Representative of Hendrik Uiterwyk's estate, Erik G. Abrahamson, P.A., and Erik G. Abrahamson, Esq, styled *A Advocates & Attorneys of Kennedy Law Group, P.A. v. Hendrik Uiterwyk, P.A., et al.,* Hillsborough County Circuit Court, Case Number 21-CA-001347 (the "Underlying Lawsuit"). Doc. 91 ¶ 11. That same day, KLG filed a Statement of Claim against the Estate of Hendrik Uiterwyk in the probate proceeding styled *In Re. Estate of Hendrik Uiterwyk*, Case No. 21-CP-000258 in the Hillsborough County Circuit Court. *Id.* ¶ 12.

**Underlying Lawsuit**

The operative complaint in the underlying lawsuit contains the following general allegations. *See* Doc. 44-1. First, KLG alleged that Uiterwyk, Abrahamson, and their respective professional associations operated and conducted business in Florida as A&U. *Id.* at 1–4. Following a meeting, Hendrik Uiterwyk allegedly proposed the JVA to KLG. *Id.* at 7–9. On June 28, 2002, Uiterwyk & Barnes (the former name of HUPA and a d/b/a for A&U[7] and KLG finalized the JVA, which provided that KLG would refer litigation cases to HUPA, and HUPA would refer

---

[6] The Amended Complaint indicates that KLG is "an interested party that has been included as a defendant in order to bind it to the results of this action." Doc. 44 ¶ 8.

[7] The Court hereafter refers to this entity by the name it is sued under, Hendrik Uiterwyk, P.A. ("HUPA").

certain pre-litigation matters to KLG. Doc. 44-1 at 67–69. The JVA provided that it would "convert to a partnership agreement on the same terms and conditions set forth herein" on January 1, 2003, and that the partnership would be owned equally by KLG and HUPA and known as "Kennedy, Uiterwyk, Merricks and Barnes." *Id.* at 68.

The underlying lawsuit brought the following counts against the Uiterwyk Defendants: Counts One and Two sought an equitable accounting to establish the existence of referral fees collected but not disbursed to KLG pursuant to the JVA. Doc. 44-1 at 20–26. Counts Five and Six alleged breaches of the JVA and sought fees allegedly owed to KLG. *Id.* at 31–35. Counts Nine and Ten, for unjust enrichment, alleged that the Uiterwyk Defendants failed to pay KLG its "full amount owed" under the JVA. *Id.* at 40–41. Count Thirteen, an "estoppel" claim, alleged that KLG incurred expenditures based on representations in the JVA, that KLG accepted delayed fee payments based on this promise to pay, and that HUPA refused to pay the fees owed under the JVA. *Id.* at 44–46. Counts Fourteen and Fifteen alleged fraud, and specifically that Hendrik Uiterwyk made false statements to induce KLG to enter the JVA and perform its contractual duties to the Joint Venture. *Id.* at 46–51. Count Sixteen alleged a violation of Fla. Stat. § 772.104, in that Hendrik Uiterwyk fraudulently contracted with KLG and intentionally withheld money owed pursuant to the JVA. *Id.* at 51–55. Finally, Counts Seventeen and Eighteen asserted claims for

breach of fiduciary duty against the Uiterwyk Defendants for failure to pay KLG under the JVA and perform their duties to KLG's satisfaction. *Id.* at 55–59.[8]

**Probate Action**

Plaintiff argues (Doc. 86 at 9), and Defendants do not challenge (*see* Doc. 92) that KLG's Probate Claim presents virtually identical claims as the underlying lawsuit, but against the Uiterwyk Estate only. *Compare* Doc. 44-1 *with* Doc. 44-2. The first paragraph of the Statement of Claim reads as follows:

> 1. The basis for the claim is: HENDRIK UITERWYK (UITERWYK), entered into a Partnership Agreement on or about June 28, 2002, wherein both UITERWYK and Claimant, "A Advocates & Attorneys of KENNEDY LAW GROUP, P.A" (KENNEDY), agreed to form a formal partnership, to arrange their affairs with respect to referral of hundreds of potential clients involving (1) nursing home liability, (2) medical malpractice, (3) product liability, (4) admiralty, (5) wrongful death, and (5) tobacco litigation. The arrangement called for KENNEDY to refer these matters directly to UITERWYK and his firm, UITERWYK & BARNES, P.A., a Florida corporation, and upon resolution of such referred cases, UITERWYK would remit to KENNEDY 33% (thirty-three percent) of all net collected proceeds resulting from such referrals, provided the fee was earned after January 1, 2003. The Agreement further provided that if the fee was earned prior to January 1, 2003, the amount remitted to KENNEDY would be 25% (twenty-five percent) of the net collected fee.

Doc. 44-2 at 2. The claim goes on to describe Hendrik Uiterwyk's multiple alleged breaches of the JVA. *See id.* at 2–5.

---

[8] In the underlying lawsuit, KLG alleged that various wrongful acts and omissions substantiated these counts, including but not limited to Defendants' improper rejection or withdrawal from cases referred by KLG, subsequent referral of cases to other law firms, and settling cases referred by KLG for less than full value. *See* Doc. 44-1.

Finally, Plaintiff submits (as supplemental authority) an order from the underlying lawsuit granting the defendants' motion for final summary judgment and denying the plaintiff's motion for partial summary judgment. *See* Doc. 98-1. Specifically, Plaintiff cites three paragraphs which note that: each of the claims in the underlying suit was premised on the JVA; the plaintiff sought to recover damages consisting of the difference between the agreed upon contingent fees and the amount it was entitled to under the JVA; and the final paragraph, which enters summary judgment in favor of the defendants, including the Uiterwyk Defendants. *See* Doc. 98 at 2. At the time of this motion's briefing, the state case was pending. It has now ended, and the claims have been dismissed with prejudice.[9]

## II.    LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of

---

[9] Regardless, the outcome of the underlying state action has no effect on the mootness or merits of the issue in this case: whether Plaintiff was required to defend or indemnify the Uiterwyk Defendants. *See RLI Ins. Co. v. Coastline Title of Pinellas, LLC,* 591 F. Supp. 3d 1182, 1189 (M.D. Fla. 2022).

material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).

## B.   Applicable Law

A party seeking a declaratory judgment must show "the existence of an 'actual controversy' between the parties, a term which holds a similar meaning as the cases and controversies requirement of Article III to the United States Constitution." *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.,* 151 F. Supp. 3d 1294, 1302 (M.D. Fla. 2015) (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 239-40 (1937)). Beyond this threshold requirement, district courts have significant discretion

in deciding whether to entertain a declaratory judgment action. *See Smith v. Casey,* 741 F.3d 1236, 1244 (11th Cir. 2014) ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts a unique and substantial discretion in deciding whether to declare the rights of litigants."); *see also* 28 U.S.C. § 2201(a) (providing that district courts "may" exercise jurisdiction over a declaratory judgment claim").

A federal court sitting in diversity must apply both the substantive law of the forum, as well as the conflict-of-law rules of the forum state. *LaFarge Corp. v. Travelers Indemnity Co.*, 118 F.3d 1511, 1515 (11th Cir. 1997). And "Florida follows the rule of *lex loci contractus* – that is, Florida courts apply the law of the jurisdiction in which the contract was entered into." *State Farm Mut. Auto. Ins. Co. v. Duckworth*, 648 F.3d 1216, 1218 (11th Cir. 2011). "That rule, as applied to insurance contracts, provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006) (citing *Sturiano v. Brooks*, 523 So. 2d 1126, 1129 (Fla. 1988)).

The Policy was issued to Abrahamson & Uiterwyk, located in Tampa, Florida. Doc. 44-4 at 10. The Parties provide no evidence that the insurance contract was entered into in another jurisdiction. In their submissions, both parties primarily cite and rely on Florida law for the interpretation of the policy and the determination of the issues before the court. Doc. 86 at 14 at 11; Doc. 92 at 3–4. The Court agrees that Florida law governs this dispute.

### III.   DISCUSSION

In its Amended Complaint, Plaintiff Security National makes five arguments for why the Court should issue a declaratory judgment in its favor, each in a separate Count. It now moves for summary judgment on four Counts, as follows. First, Plaintiff argues that there is no coverage because the Underlying Actions do not seek damages for wrongful acts based on professional services, as defined in the Policy. Next, Plaintiff argues that there is no coverage because the Underlying Actions do not seek damages based on Defendants' negligent acts, errors, or omissions in providing legal services, rendered solely while acting within the scope of their duties on behalf of A&U. Finally, Plaintiff argues that Exclusion I(1) bars coverage of the underlying claims because they stem from alleged activities of an Insured in the capacity of an officer, director, partner, trustee, or employee of a business enterprise other than A&U—that is, the enterprise formed through the JVA.

Defendants argue that the underlying claims trigger coverage and the exclusion does not apply. They argue that Plaintiff wrongly reads in additional coverage requirements not contained in the Policy, and that the term "solely" is ambiguous and should be read in favor of coverage. As to the exclusion, Defendants argue that an "outside business exclusion" would not bar coverage here because the purpose of such exclusions, based on various non-binding decisions, is to carve out claims where there are concerns regarding a conflict of interest. Finally, they argue that whether the exclusion applies to the underlying actions is ambiguous and it therefore should not be applied.

Plaintiff replies that these arguments are largely irrelevant and that coverage was not triggered. As to the exclusion, it argues that Defendants have repeatedly, themselves, asserted that the Underlying Actions arose out of an outside business venture (that is, the JVA) and only now in their response argue that the issue is "ambiguous." As to Defendants' authority, Plaintiff argues that the alleged purpose of outside business exclusions as described by Defendants' caselaw has no effect on the application of Exclusion I(1), which makes no mention of purpose or concern for conflicts of interests, is unambiguous, and clearly bars coverage of the underlying claims.

Upon careful review, Exclusion I(1) indeed applies—and is dispositive. Based on Florida law and the allegations of the Underlying Actions, and construing the facts in a light favorable to Defendants, the underlying claims all were based upon and arising out of the Insured's alleged activities as officers, directors, partners, trustees, or employees of a business enterprise other than A&U—that is, the new entity formed by the JVA. Defendants' conclusory assertion of ambiguity is unsupported by the law or facts. As the Exclusion bars any possibility of the underlying claims being covered by the Policy, the Court will grant summary judgment in favor of Plaintiff on Count Five and will enter a judgment declaring that Security National had no duty to defend or indemnify the Uiterwyk Defendants.

Because Plaintiff's remaining Counts seek the same relief, they will be dismissed as redundant under the Court's broad discretion to entertain requests for declaratory judgment, and Plaintiff's motion for summary judgment will otherwise be denied as

moot. Defendants' motion for partial summary judgment on Count Four, which asserted that there is no coverage for the underlying claims because the Insured Defendants had prior knowledge of certain wrongful acts or circumstances, is similarly rendered moot and will be denied, as Count Four will be dismissed.

**Count Five - Exclusion I(1)**

Plaintiff argues in Counts One through Four that neither the underlying lawsuit nor the probate claim trigger coverage under the Policy. Doc. 86 at 14–21. Even assuming they did, Plaintiff argues in Count Five that Exclusion I(1) bars coverage of the underlying claims because they are premised on the Uiterwyk Defendants' alleged activities in the Joint Venture, a business enterprise other than A&U. *Id.* at 21–26. Furthermore, Plaintiff argues it is beyond dispute that the Underlying Actions are "based upon and arise out of" the Insured Defendants' alleged activities on behalf of an outside business enterprise, based on a plain reading of the underlying allegations and Defendants' own prior assertions. *Id.* Plaintiff also cites several cases in which similar exclusions were found to be unambiguous and applied. *Id.* at 23–25.

Defendants disagree, beginning their argument by stating that "[t]he outside business exclusion arguably does not apply." Doc. 92 at 12–14. They claim Plaintiff's authority is distinguishable from the facts here because each case featured allegations related to outside business activities by an Insured that gave "rise to a concern for

conflicts of interest."[10] *Id.* at 12–13. Defendants argue that the Underlying Actions here were premised on Defendants' "failure to render legal services" and alleged malpractice in the handling of cases, not conflicts of interest. *Id.* at 13. Therefore, because the underlying allegations are "primarily [due] to the alleged legal malpractice by the [Insureds]," they argue that there is no "concern for collusion with a separate business enterprise," and the Court should not apply Exclusion I(1). *Id.* at 14. Finally, without further explanation, Defendants state that "[b]ecause there is an ambiguity regarding whether the underlying complaint arises out of or is based upon the actions for the purported joint venture, this exclusion should not be applied to preclude the duty of defense." *Id.*

Plaintiff replies that Defendants' assertions are unjustified and drastically differ from their previous pleadings, as prior to their response, Defendants repeatedly represented that the Underlying Actions "ar[o]se out of" alleged breaches of the JVA, including in their Motion for Partial Summary Judgment. Doc. 95 at 2. Plaintiff argues that Defendants, with no support, now claim that an ambiguity exists as to whether the underlying actions were based upon or arose out of the purported joint venture, and that Defendants' authority is distinguishable, irrelevant, or both. *Id.* at 1–2. Plaintiff further argues that Defendants' discussion of the "purpose" of such exclusions has no bearing on whether the exclusion applies, and that they rely primarily on a

---

[10] Notably, as will be discussed further, Defendants' arguments regarding conflicts of interest and the purpose of outside business exclusions are based not on the text of the Policy here or Florida law, but solely on out-of-circuit authority.

distinguishable New Jersey case that considered a different exclusion in light of different underlying claims. *Id.* at 7–9. Finally, Plaintiff avers that Defendants' other arguments for why Exclusion I(1) should not apply are unsupported by authority, and that their vague argument of "ambiguity" is conclusory and meritless. *Id.* at 9–11.

"[A]n insurer's duty to defend its insured against a legal action 'arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage.'" *Addison Ins. Co. v. 4000 Island Boulevard Condo. Ass'n,* 721 F. App'x 847, 854 (11th Cir. 2017) (quoting *Jones v. Fla. Ins. Guar. Ass'n, Inc.,* 908 So. 2d 435, 442-443 (Fla. 2005)). An insurer has a duty to defend even if the complaint's allegations are factually incorrect or without merit and even if part of the allegations fall outside coverage. *Id.* Correspondingly, "[a]n insurer has no duty to defend where the underlying complaint does *not* allege facts that would bring the complaint within the coverage of the policy." *Band v. Twin City Fire Ins. Co.,* No. 8:11–cv–02332–EAK–TBM, 2012 WL 1142396 at *4 (M.D. Fla. Apr. 4, 2012) (citing *MJCM, Inc. v. Hartford Cas. Ins. Co.,* No. 8:09-cv-2275-EAK-TBM, 2010 WL 1949585 at *5 (M.D. Fla. May 14, 2010) (emphasis added)).

Florida courts interpret insurance policies by "start[ing] with the plain language of the policy, as bargained for by the parties." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (quoting *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). "[C]lear and unambiguous policy terms should be given their plain, ordinary, and generally accepted meaning." *Office Depot, Inc. v. Nat'l Union Fire*

*Ins. Co.*, 734 F. Supp. 2d 1304, 1314 (S.D. Fla. 2010). The fact that a policy term is not defined does not, by itself, create ambiguity. *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072 (Fla. 1998). "If a policy provision is clear and unambiguous, the court cannot indulge in construction or interpretation of its plain meaning, and should simply enforce it according to its terms, whether it is a basic insuring clause or an exclusionary provision." *Office Depot, Inc.*, 734 F. Supp. at 1314.

"When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1359 (M.D. Fla. 2001); *see also LaFarge v. Travelers Indem. Co.,* 118 F.3d 1511, 1516 (11th Cir. 1997). Thus, "exclusionary provisions . . . susceptible to more than one meaning must be construed in favor of the insured.'" *State Farm Mut. Auto. Ins. Co. v. Pridgen,* 498 So. 2d 1245, 1248 (Fla. 1986). However, this is true only when "a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction. *Excelsior Ins. Co. v. Pomona Park Bar & Package Store,* 369 So. 2d 938, 942 (Fla. 1979). Therefore, "courts should not strain to find ambiguity . . . if there is no genuine ambiguity, there is no reason to bypass the policy's plain meaning." *Travelers Prop. Cas. Co. of Am. v. Salt 'N Blue LLC,* 731 F. App'x 920, 923 (11th Cir. 2018) (citing *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 412 F.3d 1224, 1228 (11th Cir. 2005)).

Here, Exclusion I(1)'s clear and unambiguous language, considered together with the allegations in the Underlying Actions, can lead only to the conclusion that the exclusion bars coverage. First, the Court briefly recaps several key Policy terms. Plaintiff does not dispute that the Uiterwyk Defendants are insured under the policy, as the Named Insured (A&U) is the d/b/a title of HUPA, the P.A. solely owned by Hendrik Uiterwyk, now deceased. *See* Doc. 44-1. Accordingly, Plaintiff concedes that the Uiterwyk Defendants would be covered for "Damages" resulting from "Claims" alleging a "Wrongful Act" under the policy, subject to the Policy's additional terms and exclusions. Doc. 86 at 2.

Exclusion I(1) of the Policy states that:

This Policy shall not apply to any **Damages** or **Claims Expenses** incurred with respect to any **Claim**: [. . .]

I. based upon or arising out of any actual or alleged activities of an **Insured** as, or an **Insured** acting in, the capacity as:

1. an officer, director, partner, trustee or employee of a pension, welfare, profit sharing, mutual or investment trust or fund, charitable organization, corporation or business enterprise, other than the **Named Insured [A&U]**;

(Doc. 44-4 at 22–23) (bolded text in original).

Plaintiff argues that courts applying Florida law have found similarly worded exclusions to be clear and unambiguous. It correctly asserts that the terms "arising out of" and "relating to" have been found to be unambiguous—and that courts have stated they "should be broadly interpreted." *Falcon Trust Group, Inc. v. Travelers Cas. & Sur. Co.,* 725 F. Supp. 2d 1363, 1368 (S.D. Fla. 2010) (citing *Taurus Holdings, Inc. v. U.S.*

*Fid. & Guar. Co.,* 913 So. 2d 528, 539 (Fla. 2005)). The term "arising out of" has been described as "broader in meaning than the term 'caused by' and meaning 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to,' or 'having a connection with.'" *Taurus Holdings,* 913 So. 2d at 532; *see also Bond Safeguard Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* No. 6:13-cv-561-RBD-DAB, 2014 WL 5325728, *7 (M.D. Fla. Oct. 20, 2014), *aff'd,* 628 F. App'x 648 (11th Cir. 2015) ("Florida courts have discussed the phrase 'arising out of' and have held that the phrase is unambiguously broad-even when used in an exclusion clause."); *see also James River Ins. Co. v. Ground Down Eng'g, Inc.,* 540 F.3d 1270, 1275 (11th Cir. 2008).

Having established that the term "arising out of" is unambiguous and sweeping, the Court considers the rest of the exclusion, which poses the question of whether the underlying claims arise entirely from the Uiterwyk Defendants' alleged activities as "an officer, director, partner, trustee or employee" of a "business enterprise, other than [A&U]." Doc. 44-4 at 22–23.

Plaintiff argues that they do. *See* Doc. 86 at 22. First, Plaintiff argues that the plain terms of the JVA [11] created a "partnership, limited liability company or professional association owned equally by [KLG and HUPA]" to be known as "Kennedy, Uiterwyk, Merricks and Barnes." Doc. 44-1 at 68. The JVA required KLG and HUPA to refer cases and transfer files to one another for joint representation, to

---

[11] Plaintiff notes (and Defendants do not dispute) that the JVA is made an exhibit to, and is therefore a part of, the underlying complaint and statement of claim in the probate action. *See* Doc. 86 at 22 n.15.

split fees, and to perform other obligations. *Id.* at 67–69. Plaintiff thus argues that, based on the ordinary meaning of "business enterprise," the Joint Venture created was a business enterprise outside of A&U, and the underlying claims fall under the exclusion. Doc. 86 at 22. Defendants, apart from a cursory claim that the exclusion clause is ambiguous, present no counterargument as to the meaning of any terms in the exclusion or, in fact, whether the exclusion covers the underlying claims. *See* Doc. 92 at 12–15.

When interpreting an insurance policy, Florida courts give "clear and unambiguous policy terms . . . their plain, ordinary, and generally accepted meaning." *Office Depot, Inc.,* 734 F. Supp. 2d at 1314. As to how Courts determine ordinary meaning, *Sphinx Intern., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 412 F.3d 1224 (11th Cir. 2005) is instructive. In *Sphinx,* the Eleventh Circuit reviewed an insurance policy under Florida law to determine whether an officer was "duly elected." *Id.* at 1227. The district court in *Sphinx* held that the exclusion was not ambiguous simply because the policy did not define "duly." *Id.* Instead, it applied the ordinary dictionary definition of "duly" to the facts. *Id.* The Eleventh Circuit affirmed the district court's use of a dictionary to determine the plain meaning of the term, stating the "district court's reasoning [was] spot on." *Id.* at 1228. The *Sphinx* court noted this approach "has substantial support in Florida case law, which often uses dictionaries to define the plain meaning of words in insurance contracts." *Id.* (citing

*Deni Assocs. of Florida, Inc., v. State Farm Fire & Cas. Ins. Co.,* 711 So. 2d 1135, 1139 (Fla. 1998)); *see also Pridgen,* 498 So. 2d at 1248.

Based on Plaintiff's unrebutted argument as to the meaning of the exclusion's terms and relevant legal authority, the Court agrees with Plaintiff and finds that there is no genuine dispute of material fact that the JVA created a business enterprise other than A&U, the Named Insured. In support, Plaintiff provides definitions of the relevant terms from Black's Law Dictionary. *See* Doc. 86 at 22–23. A "business enterprise" is commonly understood to be a business or organization providing goods or services. *See* Business Enterprise, Black's Law Dictionary (11th ed. 2019) ("A for-profit company, business, or organization that provides financial, commercial, or industrial goods and services"); *see also* Partnership, Black's Law Dictionary (11th ed. 2019) ("A voluntary association of two or more persons who jointly own and carry on a business for profit"). Accordingly, Plaintiff argues that the Uiterwyk Defendants and KLG's agreement to affiliate as equal owners of a partnership, LLC, or P.A. under the JVA and to provide legal services in exchange for money constituted a "business enterprise," as that term is commonly understood. *See* Doc. 86 at 22–23.

The Court agrees. In purporting to create a joint venture that would later automatically become a partnership, the JVA created a business enterprise other than A&U. Simply put, the record evidence shows that the Uiterwyk Defendants and KLG, through the JVA, agreed to form a new entity to provide legal services and that they would refer certain types of cases to each other. This fits neatly into the definition of a business enterprise.

All that is left to determine is whether the exclusion applies to the entirety of the underlying claims—or whether, as Defendants argue, the issue is "ambiguous." Here too, the Court agrees with Plaintiff, as there is no genuine dispute that the Underlying Actions are based upon the Insureds' alleged activities on behalf of the Joint Venture. A plain reading of the underlying allegations reveals that KLG's allegations and claims are all predicated on the Insureds' actions with respect to clients referred to or from the Joint Venture, as well as alleged breaches of duties the Insureds owed KLG pursuant to the JVA. *See* Docs. 44-1, 44-2. And indeed, the Uiterwyk Defendants themselves assert that the Underlying Actions arose from the joint venture in numerous pleadings, stating that "the Underlying Lawsuit arises out of the alleged breach of a written Agreement purportedly signed over twenty years ago on June 28, 2002"—*i.e.,* the JVA. *See, e.g.,* Doc. 49 ¶ 2; Doc. 52 ¶ 2; Doc. 54 ¶ 2.

Further, the Court need not rely on Defendants' pleadings in this case, because both the underlying complaint and the probate statement of claim plainly base all their allegations on the Uiterwyk Defendants' failure to comply with the JVA, in their capacity as members or partners of the business enterprise formed by the agreement.[12]

As previously detailed in the factual background section of this order, the underlying complaint was entirely based upon the Uiterwyk Defendants' failure to comply with their obligations to KLG under the JVA. *See* Doc. 44-1 at 20–66.

---

[12] The first page of the agreement states that "Uiterwyk [HUPA] and Kennedy agree to the formation of a formal partnership, limited liability company or professional association on January 1, 2003." Doc. 44-1 at 67.

Similarly, the probate claim, filed the same day as the underlying lawsuit, was premised entirely on Hendrik Uiterwyk's breaches and violations of the JVA. Defendants do not counter this assertion, and having considered the underlying complaint and statement of claim in light of Exclusion I(1)'s plain meaning, the Court agrees that all of these claims were based upon the Uiterwyk Defendants' alleged activities in the capacity of "an officer, director, partner, trustee or employee of a . . . business enterprise." *See* Docs. 44-1, 44-2. Thus, Exclusion I(1) unambiguously bars coverage here.

Although Defendants do not make arguments based on the definitions of terms in the exclusion or its application to the underlying claims, they do present several unpersuasive arguments based on distinguishable caselaw and an assertion of ambiguity. First, Defendants cite (but largely fail to apply to the facts of this case) several non-binding and distinguishable decisions. Doc. 92 at 12–15. These cases are cited to support the proposition that the Exclusion does not apply because the underlying claims "do not give rise to the concern for collusion with a separate business enterprise because the alleged enterprise is based entirely upon the performance of legal services." *Id.* at 13–14. Upon closer examination, however, Defendants' authority applies distinguishable exclusions to distinguishable underlying claims, and—as a threshold issue, Defendants do not explain the legal basis under which this Court could consider the alleged "purpose" of Exclusion I(1), which is nowhere to be found in the Policy or Florida law. Therefore, their arguments are rejected.

Defendants cite *Greenberg & Covitz v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 312 N.J. Super. 251, 259–261 (App. Div. 1998) to argue that the purpose of outside business exclusions is relevant here. They argue that *Greenberg* held that an outside business exclusion did not apply where "legal services were provided in connection with residential mortgage loans and a scheme to defraud was alleged" because those facts did not fall under the "purpose of the exclusion." Doc. 92 at 13. In fact, *Greenberg* declined to apply the exclusion not based on its purpose, but because even if it did exclude *some* of the underlying claims from coverage, the insurer's duty would nevertheless be triggered by other allegations that fell outside the scope of the exclusion. *Id.* at 261 (internal citation omitted) ("If that allegation [in the underlying complaint] is proved at trial, exclusion (g), considered by itself, would not exculpate National Union from its duty of indemnification. So long as any claim is asserted which is within the coverage of the policy, the insurer is obligated to defend until that claim is eliminated.").

Plaintiff is therefore correct that *Greenberg* provides no support for the argument that Exclusion I(1) does not apply based on the purpose of allegedly similar exclusions.[13] Nor do Defendants alternatively provide argument for which of the

---

[13] The other authority Defendants cite in their Response, which they fail to elaborate upon or apply to this case, are no more persuasive. *See* Doc. 92 at 13–14. *Westport Ins. Co v. Bayer,* 284 F.3d 489, 498 (3d Cir. 2002), for example, involved different exclusions and different underlying facts, and it turned on the application of the words "operate" and "control," which do not appear in the Exclusion here. And in *Clarendon Nat'l Ins. Co., v. Vicker,* 265 Fed. Appx. 890, 891 (11th Cir. 2008), an (unpublished) Eleventh Circuit case, the Court found that because certain underlying claims fell outside the scope of two exclusions, the duty to defend

Case 8:22-cv-00106-CEH-CPT   Document 102   Filed 03/26/24   Page 25 of 28 PageID 1523

underlying claims would fall outside the ambit of the exclusion (therefore triggering the duty to defend), as was mentioned in *Greenberg*.

Lastly, Defendants' ambiguity argument is conclusory and devoid of factual support or analysis. In two lone sentences, they assert that "[b]ecause there is an ambiguity regarding whether the underlying complaint arises out of or is based upon the actions for the purported joint venture, this exclusion should not be applied to preclude the duty of defense. Therefore, it must be rejected." Doc. 92 at 14. To the contrary, based on the Policy, applicable caselaw, definitions of the terms, and the allegations in the Underlying Lawsuit and Probate Claim, none of which Defendants rebut, there is no dispute that the underlying allegations "are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." *HBE Corp.,* 160 F. Supp. 2d at 1359. Therefore, the Court must grant summary judgment for Plaintiff on Count Five, as it had no duty to defend in the Underlying Actions.

Having found that Security National had no duty to defend the Uiterwyk Defendants in the Underlying Actions, it necessarily had no duty to indemnify them either. *See Council v. Paradigm Ins. Co.,* 133 F. Supp. 2d 1339, 1341 (M.D. Fla. 2001) (holding that the duty to defend an insured is broader than the duty to indemnify, and that if a Court finds that "[the insurer] had no duty to defend, then [the insurer] had no duty to indemnify the insured"); *see also Nova Cas. Co. v. Waserstein,* 424 F. Supp. 2d 1325, 1332 (S.D. Fla. 2006) (citations omitted) ("The duty to defend is broader than

---

the entire suit was triggered. Here, Defendants merely cite to these (and other) cases without explaining why any underlying claims would not be covered by Exclusion I(1).

the duty to indemnify, and thus, where the insurer has no duty to defend, it necessarily has no duty to indemnify.").

### The Court Declines Jurisdiction on the Remaining Grounds for Declaratory Judgment (Counts One, Two, Three, and Four)

All of Security National's Counts request the same relief: a declaratory judgment stating that it had no obligation under the terms of the Policy to defend or indemnify the Insured Defendants in the Underlying Lawsuit and Probate Claim. Doc. 44 at 16–17, 18–19, 20, 24, 25. Because the remaining counts seek the same relief, and are therefore duplicative of Count Five, the Court, in its discretion, will decline to exercise jurisdiction over the remaining Counts and dismiss them.

Where, as here, a claim for declaratory judgment is redundant with an earlier claim, courts frequently decline to consider the duplicative grounds for declaratory judgment. *See RLI Ins. Co. v. Coastline Title of Pinellas, LLC,* 591 F. Supp. 3d 1182, 1187–1188 (M.D. Fla. Mar. 8, 2022); *James River Ins. Co. v. O'Gallagher LLC,* No. 21-80865-CV, 2022 WL 2961024, at *3 (S.D. Fla. July 19, 2022).[14]

Here, Counts One through Four are duplicative of Count Five, on which the Court will grant summary judgment for Plaintiff. Each Count asks, based on a different

---

[14] Similarly, Courts often decline to rule on a declaratory judgment count where other non-declaratory judgment counts are redundant. *See also Organo Gold Int'l, Inc. v. Aussie Rules Marine Servs., Ltd.,* 416 F. Supp. 3d 1369, 1375–1377 (S.D. Fla. 2019) ("Where . . . [a] declaratory judgment count would serve no useful purpose because the issues will be resolved by another claim, courts generally decline to entertain the declaratory judgment count."); *Goodbys Creek, LLC v. Arch Ins. Co.,* No. 3:07-CV-947-MMH-HTS, 2009 WL 10671130, at *5 (M.D. Fla. Aug. 11, 2009); *Gendler v. Related Grp.,* No. 09-21867-CIV, 2009 WL 10668980, at *4 (S.D. Fla. Sept. 14, 2009) ("Requests for declaratory judgment which are redundant to other claims . . . need not be permitted.").

legal basis, that the Court declare that "Security National has no obligation under the Insuring Agreement of the Policy to defend or indemnify any of the Insured Defendants in the Underlying Lawsuit . . . [or] in the Probate Claim." Doc. 44 at 16–19, 24–25. Because the Counts request identical relief and the Court has already found that such relief is warranted based on Count Five, the Court will decline to exercise jurisdiction over the remaining claims. Instead, the Court will dismiss Counts One, Two, Three, and Four. Consequently, Defendants' motion for partial summary judgment as to Count Four will be denied as moot.

Accordingly, for the reasons stated above, it is **ORDERED** that:

1.      Plaintiff Security National Insurance Company's Motion for Summary Judgment (Doc. 86) is **GRANTED** as to Count Five of the Amended Complaint**.**

2.      As a matter of law, Security National Insurance Company had no duty to defend or indemnify Hendrik Uiterwyk, P.A., or Vicki S. Uiterwyk as personal representative of the Estate of Hendrik Uiterwyk, under the policy of insurance No. SES1797032 00 issued to Abrahamson & Uiterwyk, in connection with the Underlying Lawsuit in the Thirteenth Judicial Circuit Court in and for Hillsborough County, Florida, styled *A Advocates & Attorneys of Kennedy Law Group, P.A. aka Kennedy Law Group v. Hendrik Uiterwyk, P.A. fka Uiterwyk & Barnes P.A. dba Abrahamson and Uiterwyk, et. al.,* Case No. 21-CA-001347, or the Statement of Claim filed by KLG in the probate proceeding styled *In Re. Estate of Hendrik Uiterwyk,* Case No. 21-CP-000258. A Declaratory Judgment will be entered by separate Order.

3.      Counts I, II, III, and IV of the Amended Complaint are **DISMISSED**.

4.     Defendants' Motion for Partial Summary Judgment (Doc. 87) is **DENIED AS MOOT**. The Court has found that Plaintiff Security National Insurance Company has no duty to defend or indemnify the remaining Defendants based on Count Five of the Amended Complaint and dismissed Count Four as redundant. Therefore, Defendants' motion for partial summary judgment is denied as moot.

**DONE** and **ORDERED** in Tampa, Florida on March 26, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:
Counsel of Record